UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUTH DOPSON-TROUTT and
FRANK TROUTT,

    Plaintiffs,

v.                                                     Case No.: 8:06-CV-1708-T-24-EAJ

NOVARTIS PHARMACEUTICALS
CORPORATION,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on a Motion for Summary Judgment filed by Defendant Novartis Pharmaceuticals Corporation ("NPC"). (Dkt. 73.) Plaintiffs Ruth Dopson-Troutt and Frank Troutt filed a response in opposition to the motion. (Dkt. 77.) NPC filed a reply (Dkt. 89), Plaintiffs filed supplemental authority (Dkt. 92), and NPC filed a response to the supplemental authority (Dkt. 93). The Court conducted a hearing on the motion on March 8, 2013. For the reasons stated herein, the motion is denied.

**I.**    **Background**

Plaintiff Ruth Dopson-Troutt was diagnosed with breast cancer in 1997. In 1999, Ms. Dopson-Troutt's oncologist, Arthur Feldman, M.D., discovered that her breast cancer had metastasized to the bones in her hip and pelvis. Dr. Feldman prescribed Aredia and later Zometa, both of which are produced and marketed by NPC. Aredia and Zometa are in a class of drugs known as bisphosphonates, and have been approved by the Food and Drug Administration ("FDA") for treatment of hypercalcemia of malignancy and for treatment of bone metastases.

Ms. Dopson-Troutt received infusions of Aredia and Zometa from 1999 to May of 2005. At the time, she lived in Pennsylvania. In 2004, while receiving Zometa, Ms. Dopson-Troutt had a tooth extracted by a dentist in Pennsylvania.

In 2005, Ms. Dopson-Troutt moved to the state of Florida, and began seeing Thomas Tang, M.D., an oncologist. Ms. Dopson-Troutt reported having jaw pain that began after her tooth extraction. Dr. Tang diagnosed her jaw pain as osteonecrosis of the jaw (ONJ), caused by her use of Aredia and Zometa and the tooth extraction. Dr. Tang recommended that she no longer receive Zometa infusions until her dental problems were cleared. From August of 2005, when Ms. Dopson-Troutt was first seen by Dr. Tang, through the last time he saw her in 2007, Dr. Tang did not prescribe Zometa for her because the wound in her jaw had not healed.

On September 15, 2006, Ms. Dopson-Troutt and her husband, Frank Troutt, filed suit in the Middle District of Florida against NPC for strict liability, negligent manufacture, failure to warn, breach of express warranty, breach of implied warranty, and loss of consortium. The Judicial Panel on Multidistrict Litigation subsequently removed the case to the Middle District of Tennessee for consolidated pretrial proceedings with similar actions brought against NPC by other plaintiffs. In 2012, the case was remanded to this Court.

**II.    Standard of Review**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir.

2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.*

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Id.* In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### III. Discussion

In the present motion, NPC moves for summary judgment on the following grounds: (1) that Plaintiffs cannot overcome the presumption of no liability under Florida law because Aredia and Zometa complied with applicable FDA regulations; (2) that Plaintiffs' failure to warn claim fails because NPC's warnings were adequate, because there is no evidence that different warnings would have prevented Ms. Dopson-Troutt's injuries, and because there is no evidence that Ms. Dopson-Troutt's injuries were caused by Aredia and Zometa; (3) that Plaintiffs have no evidence of a defective design; and (4) that Plaintiffs' breach of warranty claims must fail because there is no privity with NPC.

#### A. Choice of Law

First, the Court must decide which law governs this case. NPC urges the Court to apply Florida law, while Plaintiffs argue that Pennsylvania law governs. This case is before the Court on diversity jurisdiction. In diversity actions, this Court "is bound to apply the substantive law

of the state in which it is located," which includes "a state's law regarding choice of laws." *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir. 1990). Accordingly, the Court must determine which state's substantive law the Florida Supreme Court would choose to govern Plaintiffs' claims, and it is "bound to decide the case the way it appears [the Florida Supreme Court] would." *Towne Realty, Inc. v. Safeco Ins. Co. of Am.*, 854 F.2d 1264, 1269 n.5 (11th Cir. 1988).

Florida applies the "significant relationships test" for conflicts of law. That test examines: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred; (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980).

Here, it is undisputed that Ms. Dopson-Troutt received all of her Aredia and Zometa infusions in Pennsylvania, and that she had a tooth extracted by a dentist in Pennsylvania while she was living there. She did not receive any Aredia or Zometa infusions after she moved to Florida in 2005. Plaintiffs allege that, after Ms. Dopson-Troutt's tooth was extracted, she developed osteonecrosis of the jaw caused by her use of Aredia and Zometa. Thus, the place where the injury occurred and the place where the conduct causing the injury occurred in Pennsylvania.

NPC points out that there are no medical records of Ms. Dopson-Troutt receiving infusions of its drugs in Pennsylvania, and the physician who administered the drugs, Dr. Feldman, does not remember her. In addition, there are no records of her tooth extraction nor can she remember the name of the dentist who extracted it. NPC furthermore emphasizes that the

only records regarding Ms. Dopson-Troutt's treatment are from Florida physicians, from whom she has received her medical and dental treatment since 2005. Nevertheless, Ms. Dopson-Troutt"s statements that the drug infusions and the tooth extraction occurred in Pennsylvania are undisputed. The treatment Ms. Dopston-Troutt received in Florida occurred after the events that are alleged to have caused her injury occurred. Accordingly, the Court concludes that the state with the most significant relationship to the claims alleged here is Pennsylvania, and the Court shall apply that state's law.

### B. Florida Presumption of No Liability

NPC first argues that it is entitled to a rebuttable presumption of no liability under Florida law because its drugs comply with federal safety regulations, citing Florida Statute Section 768.1256(1), and that Plaintiffs cannot overcome this presumption. The Court, however, rejects this argument as a basis for summary judgment because Florida substantive law does not apply to this case.

### C. Plaintiffs' Failure to Warn Claim

Next, NPC argues that Plaintiffs' claims fail because: (1) Plaintiffs have no evidence to establish that its warnings were not adequate or timely; (2) Plaintiffs have no evidence that different warnings would have prevented Ms. Dopson-Troutt's jaw injury; and (3) Plaintiffs have no evidence that Ms. Dopson-Troutt suffered an injury caused by using Aredia or Zometa. In response, Plaintiffs argue that there are significant factual issues concerning the adequacy of NPC's warnings, and that the multi-district litigation court ("the MDL Court") and other district courts have already denied summary judgment on this basis.

#### 1. Adequacy of the Warnings

As noted by Plaintiffs, NPC's summary judgment arguments concerning the adequacy of its Aredia and Zometa warnings were rejected by the MDL Court. *See In re Aredia and Zometa Prods. Liab. Litig.*, No. 3:06-md-1760, slip op. (M.D. Tenn. Aug. 13, 2009). Specifically, the MDL Court found, "there are factual questions concerning what Defendant knew or should have known when; whether there are, in fact other 'risk factors' for ONJ and what those are; and whether Defendant had adequately conveyed information to physicians of the known or knowable risk at the time of each . . . treatment." *Id.* at 3. The Court will not revisit the MDL Court's ruling. NPC is not entitled to summary judgment on this basis. *See also Chiles v. Novartis Pharms. Corp.*, No. 3:06-cv-96, slip op. (M.D. Fla. Feb. 7, 2013) (denying summary judgment on this basis); *Taylor v. Novartis Pharms. Corp.*, No. 06-cv-61337, p.10-16 (S.D. Fla. Jan. 7, 2013) (same).

### 2. General Causation

NPC's summary judgment motion regarding general causation was also denied by the MDL Court. *See In re Aredia and Zometa Prods. Liab. Litig.*, No. 3:06-md-1760, 2009 WL 2497536 (M.D. Tenn. Aug. 13, 2009). After examining testimony presented by the parties' expert witnesses, the MDL Court found that the parties had presented "more than unsupported speculation on both sides of this issue as to whether Aredia and Zometa can cause ONJ," calling it a "classic jury question." The Court will not revisit this ruling. NPC is not entitled to summary judgment on this basis. *See also Chiles v. Novartis Pharms. Corp.*, No. 3:06-cv-96, slip op. (M.D. Fla. Feb. 7, 2013) (denying summary judgment on this basis); *Taylor v. Novartis Pharms. Corp.*, No. 06-cv-61337, p.10-16 (S.D. Fla. Jan. 7, 2013) (same).

### 3. Specific Causation

According to NPC, Plaintiffs must prove through reliable expert testimony that Aredia and Zometa caused Ms. Dopson-Troutt to develop osteonecrosis, in order to prevail on her claims. NPC argues that Plaintiffs' experts failed to rule out other conditions present in Ms. Dopson-Troutt's medical history, such as osteomyelitis, diabetes, dental extractions, poor oral hygiene, anemia, and smoking, all of which could cause osteonecrosis. Furthermore, NPC argues that there is no evidence in the record to show that Ms. Dopson-Troutt's osteonecrosis preceded her osteomyelitis, and therefore, Plaintiffs cannot show that Aredia or Zometa caused her injury.

The Court concludes that issues of material fact exist concerning whether Aredia or Zometa caused Ms. Dopson-Troutt to develop osteonecrosis of the jaw. Dr. Feldman, the oncologist who prescribed Aredia and later Zometa for Ms. Dopson-Troutt, did not testify whether he would or would not have continued to prescribe Ms. Dopson-Troutt Aredia and Zometa, if he had been warned of the risks of the drugs. Dr. Tang, however, testified that he diagnosed Ms. Dopson-Troutt's jaw pain as osteonecrosis of the jaw, caused by her use of Aredia and Zometa and the tooth extraction. He recommended that she no longer receive Zometa infusions until her dental problems were cleared. Furthermore, Ms. Dopson-Troutt herself testified that she would not have continued taking the drugs if she had been adequately warned about their risks. Moreover, the MDL court already has ruled that there are factual issues concerning whether there are other risk factors for osteonecrosis of the jaw and what those risk factors are. *See In re Aredia and Zometa Prods. Liab. Litig.*, No. 3:06-md-1760, slip op. at 3 (M.D. Tenn. Aug. 13, 2009). Accordingly, NPC is not entitled to summary judgment on this basis.

### D. Plaintiffs' Design Defect Claim

NPC next argues that it is entitled to summary judgment on Plaintiffs' claim that Aredia and Zometa were defectively designed because Plaintiffs have not offered sufficient evidence on this claim and because it is entitled to protections of comment k of the Restatement (Second) of Torts. NPC argues that Aredia and Zometa were properly manufactured and, at all times, were accompanied by adequate warnings. In response, Plaintiffs argue that questions regarding the dose, duration, and effects of Aredia and Zometa should be submitted to the jury as issues of fact.

The Pennsylvania Supreme Court adopted comment k of the Restatement (Second) of Torts Section 402A as an affirmative defense to strict liability. *Hahn v. Richter*, 543 Pa. 558, 673 A.2d 888, 890-91 (Pa. 1996). However, the Court disagrees that it entitles NPC to summary judgment. Comment k to the Restatement (Second) of Torts Section 402A provides that certain drugs that are "properly prepared, and accompanied by proper directions and warnings, [are] not defective nor [are they] unreasonably dangerous." The specific language of comment k requires that the products, or drugs, be accompanied by proper directions and warnings. The Court has already ruled that there are disputed issues of material fact as to the adequacy of NPC's warnings. Therefore, comment k does not entitle NPC to summary judgment. *See Taylor v. Novartis Pharms. Corp.*, No. 06-cv-61337, p.19 (S.D. Fla. Jan. 7, 2013) (denying summary judgment for NPC on this basis).

### E. Plaintiffs' Breach of Express and Implied Warranty Claims

Finally, NPC argues that it is entitled to summary judgment on Plaintiffs' claims for breach of express and implied warranty because Ms. Dopson-Troutt was not in privity of

8

contract with NPC. Plaintiffs respond that NPC's warranty statements run through Ms. Dopson-Troutt's prescribing physicians to her.

The Pennsylvania Supreme Court has eliminated the requirement of privity in breach of warranty actions. *Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 32, 319 A.2d 903, 907 (1974). Therefore, NPC is not entitled to summary judgment on this basis.

**IV.    Conclusion**

Viewing the record in the light most favorable to Plaintiffs, there are genuine issues of material fact as to Plaintiffs' claims of strict liability, negligence, failure to warn, breach of implied and express warranty, and loss of consortium. Accordingly, NPC's Motion for Summary Judgment must be **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 2nd day of April, 2013.

Copies to: Counsel of record

SUSAN C. BUCKLEW
United States District Judge