IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| RUTH DOPSON-TROUTT and FRANK TROUTT,<br><br>  Plaintiffs,<br><br>v.<br><br>NOVARTIS PHARMACEUTICALS CORPORATION,<br><br>  Defendant. | No. 8:06-cv-1708-T-24-EAJ |

**NOVARTIS' MOTION AND SUPPORTING MEMORANDUM
<u>TO ENFORCE THE CASE MANAGEMENT ORDER</u>**

  This is a product liability case in which plaintiffs claim that Novartis' drugs, Aredia and Zometa, injured plaintiff Ruth Troutt. Trial is set for October 21, six weeks away. Novartis has long contended that plaintiffs cannot meet their burden of proof on proximate causation, given the absence of relevant testimony from the prescribing physician, Dr. Arthur Feldman. Plaintiffs have long said that they do not need such testimony to carry their burden. But late last month, plaintiffs issued a subpoena and notice of deposition for Dr. Feldman for September 20. The subpoena was facially invalid, because it issued from the Middle District of Florida, while Dr. Feldman lives in Pennsylvania. On Friday afternoon, September 6, plaintiffs issued a subpoena from what appears to be the correct district court, the Eastern District of Pennsylvania.[1] Novartis understands that Dr. Feldman has not yet been served, but files this motion so that these issues can be presented promptly to the Court.

---

[1] Sept. 6, 2013 subpoena for Dr. Feldman (Ex. 1).

A deposition of Dr. Feldman at this point would violate the case management order, under which discovery closed on March 29, 2013. Such a deposition would also be futile, since its stated scope—"care and treatment of plaintiff, Ruth Dopson-Troutt"—is directly at odds with Dr. Feldman's declaration, which says that he is "unable to provide any information or opinion regarding [his] care and treatment of Mrs. Dopson-Troutt."[2] That declaration was obtained two years ago by consent of the parties. Plaintiffs' counsel John Vecchione not only said that it was "acceptable to Plaintiff in lieu of deposition," but also threatened to move to quash if *Novartis* insisted on a deposition.[3] Novartis now moves for the Court to enforce the case management order by striking the notice of deposition.

The subpoena for Dr. Feldman's testimony is a tardy acknowledgement of what Novartis has been saying all along about plaintiffs' inability to meet their burden of proof on proximate causation given the evidence in this case. Pennsylvania law offers no heeding presumption to lift the burden from their shoulders,[4] and testimony from other doctors and other sorts of inference will not serve.[5] Dr. Feldman's declaration makes it clear that a deposition of him also cannot save the day. This is a case that should not go to trial, and the subpoena for Dr. Feldman just underscores that point.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), Novartis' counsel conferred with plaintiffs' counsel in a good faith effort to resolve the issues raised herein, but counsel did not reach agreement.

---

[2] Decl. of Dr. Feldman ¶ 12 (Ex. 2).

[3] 7/22/2011 email from John Vecchione to Brent Mickum copying Dr. Feldman's lawyer (Ex. 3).

[4] Novartis' Omnibus Mot. in Limine at 3-4 (ECF No. 143)

**MEMORANDUM OF LAW**

**I. The case management order should be enforced and the notice for an untimely deposition stricken.**

**A. The deposition that plaintiffs seek is untimely under the CMO in this case.**

Under the case management order in this case, discovery ended on March 29, 2013.[6] Plaintiffs have not filed a motion asking for leave to alter the schedule or to take an untimely deposition, much less demonstrated good cause. The notice of deposition should be stricken and the CMO enforced.[7]

**B. The deposition that plaintiffs seek would be futile.**

The subpoena seeks to compel Dr. Feldman to testify about "Care and treatment of plaintiff, Ruth Dopson-Troutt." But two years ago, Dr. Feldman provided the parties with a declaration that made it clear that he had no information to give on that very subject:

- He has "no independent recollection of [his] care and treatment of Mrs. Dopson-Troutt";

- "[T]here are no available medical records regarding [his] care and treatment of Mrs. Dopson-Troutt"; and so

- He is "**unable to provide any information or opinion regarding my care and treatment of Mrs. Dopson-Troutt.**"[8]

Not only have plaintiffs not disputed any of these assertions, but plaintiffs' counsel John Vecchione at the time expressed his satisfaction with the declaration, saying that it was

---

[5] *Id.* at 1-3.

[6] *See* Case Management & Scheduling Order at 1 (ECF No. 65).

[7] *See id.* at 3 ("Motions to…continue… any other scheduled deadlines are distinctly disfavored…."); *Marshall v. Rice*, 211 F.R.D. 680, 681 (M.D. Fla. 2002) (denying motion for leave to take depositions after the close of discovery).

[8] Declaration of Dr. Feldman ¶¶ 10-12 (emphasis added).

3

"acceptable to Plaintiff in lieu of deposition." Mr. Vecchione went on to warn that if *Novartis* insisted on a deposition of Dr. Feldman he would *file a motion to quash* it.[9]

In light of the unchallenged declaration, a deposition on the very subject that the declaration says that Dr. Feldman *cannot testify to* would be futile and wasteful.

### C. A deposition of Dr. Feldman would be unfairly prejudicial to Novartis.

Plaintiffs' subpoena from the Eastern District of Pennsylvania was filed on Friday, September 6, with a return date of September 20, *four weeks* before trial. Novartis' understanding is that Dr. Feldman has not been served as of today, and that his lawyer will move to quash the subpoena if he is served based, among other things, on the undue hardship to Dr. Feldman of having to sit for a deposition that is futile in light of his declaration and on his professional schedule and the illness of his wife. Once such a motion is filed, plaintiffs must respond to it, the relevant court (the Eastern District of Pennyslvania) must rule on it,[10] and—should a deposition be ordered—a date convenient to Dr. Feldman set. Thus, should the be denied, any deposition would likely take place even closer to trial than September 20.

Plaintiffs presumably will contend—as they must for it to make any sense for them to ask for Dr. Feldman's deposition at all—that it will uncover new information vital to their claims and to Novartis' defenses. If that were true, then the new information would require Novartis to adjust its trial preparation efforts to accommodate the new facts, one month or less before trial. This is manifestly unfair, particularly when there is no reason that plaintiffs could not have sought the deposition while discovery was open. A deposition that is designed

---

[9] 7/22/2011 email from John Vecchione.

[10] Fed. R. Civ. P. 45(c)(3) (a motion to quash shall be decided by "the issuing court").

to save plaintiffs' case is far too important to be slotted into the normal trial preparation schedule one month or less before trial.

## II. The subpoena of Dr. Feldman is an acknowledgement by plaintiffs that they cannot meet their burden of proof on proximate causation.

Plaintiffs have long argued that they *do not need* Dr. Feldman's testimony to meet their burden of proof on proximate causation.[11] But now, at the eleventh hour, they have decided to actively seek his deposition. The only possible reason for doing so after all of this time is a belated recognition that Dr. Feldman is—as Novartis has said all along—at the very heart of plaintiffs' proximate causation case. But it is far too late now to try to solve that problem with a deposition, and in any event Dr. Feldman's declaration makes it clear that the deposition would be futile. Plaintiffs' proximate causation problem is insoluble.

Novartis has filed a motion in limine asking the Court to recognize that under Pennsylvania law—which has been applied to this case—plaintiffs can meet their burden of proof *only* with testimony from Dr. Feldman, and not, as they have contended, through a "heeding presumption" or through inferential and indirect evidence about what Dr. Feldman would have done if "adequately" warned.[12] The only evidence from Dr. Feldman about how he would have behaved if warned is in the form of a declaration obtained by the parties two years ago, and it does not help plaintiffs to meet their burden: Dr. Feldman says that he cannot say that he would have done anything differently.[13] The same declaration makes clear

---

[11] Pls.' Resp. to Def.'s Mot. *in Limine* at 7-10 (ECF No. 151); Pls.' Opp'n to Novartis' 2d Mot. for Summ. J. at 23 (ECF No. 77).

[12] Novartis' Omnibus Mot. in Limine at 1-4 (ECF No. 143).

[13] Decl. of Dr. Feldman ¶ 12.

5

that a deposition of Dr. Feldman would add nothing to the picture. Novartis' contention is that plaintiffs have no evidence cognizable under Pennsylvania law sufficient to carry their burden of proof on proximate causation, and that it is entitled to judgment as a matter of law.

It is quite common for issues to become clearer as the parties focus on trial proof, and proximate causation is one of the issues that is most subject to such clarification. Just last week, the Aredia/Zometa trial on the parties' calendars prior to this one was called off when the court granted Novartis' motion for summary judgment given the absence of sufficient evidence from the treating physician to carry plaintiffs' burden of proof on proximate causation.[14] In this litigation alone, similar orders have been granted in multiple cases that were approaching trial.[15] The coming pretrial conference and hearing on Novartis' motions in limine should provide similar clarity in this case.

## CONCLUSION

For the foregoing reasons, Novartis asks the Court to enforce the scheduling order and strike the notice of deposition for Dr. Feldman.

---

[14] Mem., *Payne v. Novartis Pharm. Corp.*, No. 1:12-CV-77 (E.D. Tenn. Sept. 6, 2013) (Ex. 4)

[15] *See Zimmerman v. Novartis Pharm. Corp.,* 287 F.R.D. 357, 359 (D. Md. 2012); *Ingram v. Novartis Pharm. Corp.,* 888 F. Supp. 2d 1241, 1244 (W.D. Okla. 2012); *Eberhart v. Novartis Pharm. Corp.,* 867 F. Supp. 2d 1241, 1245 (N.D. Ga. 2011); *D'Agnese v. Novartis Pharm. Corp.*, --- F. Supp. 2d ---, No. CV-12-00749-PHX-JAT, 2013 WL 3335203 (D. Ariz. July 2, 2013); *Luttrell v. Novartis Pharm. Corp.,* 894 F. Supp. 2d 1324, 1330 (E.D. Wash. 2012).

Dated: September 9, 2013    Respectfully Submitted,

/s/ Kirby T. Griffis
Kirby T. Griffis (lead counsel; *pro hac vice*)
(kgriffis@hollingsworthllp.com)
Matthew J. Malinowski (*pro hac vice*)
(mmalinowski@hollingsworthllp.com)
HOLLINGSWORTH LLP
1350 I Street, NW
Washington, D.C. 20005
(202) 898-5800
(202) 682-1639 (fax)

Michael J. Thomas (Florida Bar No. 897760)
(mike@penningtonlaw.com)
Susan K. Spurgeon (Florida Bar No. 478229)
PENNINGTON P.A.
215 South Monroe St., 2nd Floor
Tallahassee, FL 32301
(850) 222-3533
(850) 222-2126 (fax)

*Attorneys for Defendant*
*Novartis Pharmaceuticals Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

    s/ Kirby T. Griffis
    Kirby T. Griffis
    *Admitted Pro Hac Vice*
    Matthew J. Malinowski
    *Admitted Pro Hac Vice*
    HOLLINGSWORTH LLP
    1350 I Street, N.W.
    Washington, DC  20005
    (202) 898-5800
    (202) 682-1639 (fax)
    kgriffis@hollingsworthllp.com
    mmalinowski@hollingsworthllp.com

    *Attorneys for Defendant*
    *Novartis Pharmaceuticals Corporation*