UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUTH DOPSON-TROUTT and
FRANK TROUTT,

    Plaintiffs,

v.                                          Case No.: 8:06-CV-1708-T-24-EAJ

NOVARTIS PHARMACEUTICALS
CORPORATION,

    Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant Novartis Pharmaceuticals Corporation's Motion to Enforce the Case Management Order. [Doc. 165]. Plaintiffs Ruth Dopson-Troutt and Frank Troutt filed a response in opposition, [Doc. 170], and NPC file a reply, [Doc. 173]. Argument was heard at the pretrial conference held on September 12, 2013.

**I.  BACKGROUND FACTS**

Plaintiff Ruth Dopson-Troutt was diagnosed with breast cancer, which later metastasized to her hip and pelvic bones. Dr. Arthur Feldman, her oncologist, prescribed Aredia and Zometa, which are bisphosphonate drugs that are produced, sold, and marketed by Defendant Novartis Pharmaceuticals Corporation ("NPC"). From 1999 to 2005, Dopson-Troutt was infused with Aredia and Zometa. After Dopson-Troutt had her tooth extracted, she began experiencing jaw pain caused by osteonecrosis of the jaw ("ONJ").

In 2006, Dopson-Troutt and her husband brought this action against NPC, alleging that its manufacturing, labeling, marketing, selling, advertising, and distributing of Aredia and Zometa caused their injuries and that NPC failed to, *inter alia*, adequately warn of the risk of


ONJ. This action was transferred to a Multidistrict Litigation Court in the Middle District of Tennessee for consolidated pretrial proceedings with other actions brought against NPC. In July 2011, Dr. Feldman executed a sworn declaration. [Doc. 165, Exs. 2, 3].

In 2012, the case was remanded back to this Court. In the Court's case management and scheduling order, the Court set the discovery deadline for March 29, 2013 and jury trial for October 2013. [Doc. 63]. In April 2013, the Court denied NPC's motion for summary judgment and made several *Daubert* rulings. [Docs. 110-114]. The Court also set the jury trial for a date certain, on October 21, 2013. [Doc. 109]. Plaintiffs' remaining claims are: negligent failure to warn (count III), breach of express warranty (count IV), and loss of consortium (count VI). [Docs. 1, 138].

On September 6, 2013, Plaintiffs issued a subpoena for and notice of a videotaped *de bene esse* deposition of Dr. Feldman, set to occur on September 20, 2013.[1] NPC seeks to strike the notice of Dr. Feldman's deposition as untimely, futile, and unfairly prejudicial.

**II. DISCUSSION**

NPC seeks to strike the notice of Dr. Feldman's deposition, because the deposition: (1) is untimely and lacks good cause under the Court's case management order; (2) would be futile, given Dr. Feldman's statements made in his declaration, which was obtained two years ago upon the parties' consent that his declaration would be acceptable in lieu of a deposition; and (3) would be unfairly prejudicial because it any new facts would require NPC to change its trial preparation efforts one month before trial.

In response, Plaintiffs state that they are seeking a *de bene esse* deposition to preserve testimony for trial, not a discovery deposition, and therefore are permitted to take Dr. Feldman's deposition after the Court's March 29, 2013 discovery deadline. Citing to *Charles v. Wade*, 665

---

[1] At the pretrial conference, Plaintiffs' counsel represented that Dr. Feldman has been served.

F.2d 661 (5th Cir. 1982), Plaintiffs assert that binding precedent provides that trial depositions may be taken after the discovery deadline has passed to preserve testimony for trial.

However, Plaintiffs' reliance on *Charles* for its apparent belief that it would be legal error to treat *de bene esse* depositions as subject to the discovery deadline is misplaced. The determination is subject to the Court's discretion, and while *Charles* held the district court abused its discretion in denying the movant's request to take a deposition for use at trial after the discovery deadline had passed, *Charles* does not stand for the proposition that Plaintiffs have a right to take Dr. Feldman's *de bene esse* deposition one month prior to trial in this case.

In *Chrysler International Corporation v. Chemaly*, the Eleventh Circuit explained that in allowing or disallowing a *de bene esse* deposition the district court should "consider all the circumstances, including fairness to the adverse party and the amount of time remaining before the date set for trial." 280 F.3d 1358, 1362 (11th Cir. 2002). *Chrysler* affirmed the trial court's denial of the movant's late request to take a *de bene esse* deposition, finding that:

> Chrysler did delay in acting—by moving for the letter of request more than a year after filing this lawsuit—to obtain the testimony of Sinclair in a form usable at trial. The trial date was set. And . . . Chrysler had known that Sinclair resided on a different continent and had known of the importance of Sinclair's testimony for some time: "as early as August 1999."

*Id.* at 1361. *Chrysler* also distinguished its case facts from the facts in *Charles:*

> [T]he reason given by the district court for denying permission to take the deposition was simply that the discovery period had closed. *Id.* at 664. Nothing in *Charles* suggests that the plaintiff delayed in setting the deposition of a known witness. Also, at no time before the discovery period had closed had the district court in *Charles* given any indication to the parties that it intended to treat all depositions—whether for discovery or for use at trial—in the same fashion for timing purposes. In addition, the potential deponent in *Charles* was an incarcerated prisoner in an immediately adjoining state, not—as here—a free businessman located on a different continent.

*Id.* at 1361.

*Chrysler's* circumstances are similar to the facts here. Plaintiffs unduly delayed in acting to obtain the Dr. Feldman's deposition for use at trial. They have long known that Dr. Feldman was a Pennsylvania resident, and nothing indicates that they were operating under the belief that he would appear at trial. They have also known of the significance of his testimony. This is not a case where Plaintiffs expected Dr. Feldman to provide trial testimony but Dr. Feldman later became unavailable for an unforeseen reason. Neither Plaintiffs' response motion nor oral made at the pretrial conference provide a reason for their delay in seeking his deposition for the purpose of preserving trial testimony.

Although the Court's case management order does not distinguish between deadlines for discovery and *de bene esse* depositions, neither do the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 32. It is not uncommon or inherently unreasonable for a court to treat discovery deadlines as applying to all depositions. *Chrysler*, 280 F.3d at 162 n.8. Thus, in assuming that the Court would draw a distinction, Plaintiffs "assume a risk: they cannot count on the [] [C]ourt's allowing a deposition to be taken closer to the trial date." *Id*.

Further, NPC contends Dr. Feldman's *de bene esse* deposition would be unfairly prejudicial because any new facts would require NPC to change its trial preparation efforts just one month before trial. Plaintiffs' denial that NPC would be unfairly prejudiced is insufficient to show otherwise. Plaintiffs also assert that the primary reason for taking Dr. Feldman's *de bene esse* deposition is to preserve his testimony for trial in the event NPC objects to the admissibility of Dr. Feldman's declaration. NPC negates this concern; in its reply and at the pretrial conference, NPC represented to the Court that it would not object to the admissibility of Dr. Feldman's declaration. Moreover, Plaintiffs stated they nonetheless believe that their case "is submissible under the law" without Dr. Feldman's deposition. [Doc. 170, at 7].

Under the facts of this case—Plaintiffs' undue delay in seeking to obtain Dr. Feldman's deposition, the timing of trial, unfairness to NPC, and NPC's representation that it will not object to the admissibility of Dr. Feldman's declaration—the Court exercises its discretion and grants NPC's request to strike the notice of Dr. Feldman's *de bene esse* deposition.

### III. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** that Defendant Novartis Pharmaceuticals Corporation's Motion to Enforce the Case Management Order [Doc. 165] is **GRANTED**.

**DONE AND ORDERED** in Tampa, Florida, this 16th day of September, 2013.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of record and parties