UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUTH DOPSON-TROUTT and
FRANK TROUTT,

    Plaintiffs,

v.                                          Case No.: 8:06-CV-1708-T-24-EAJ

NOVARTIS PHARMACEUTICALS
CORPORATION,

    Defendant.
_____/

## ORDER

This cause comes before the Court on the Omnibus Motion *in Limine* filed by Plaintiffs Ruth Dopson-Troutt and Frank Troutt. [Doc. 144]. Defendant Novartis Pharmaceuticals Corporation opposes. [Doc. 146]. A hearing on the motion was held after the pretrial conference on September 12, 2013.

**I.    BACKGROUND FACTS**

Plaintiff Ruth Dopson-Troutt was diagnosed with breast cancer, which later metastasized to her hip and pelvic bones. Dr. Arthur Feldman, her oncologist, prescribed Aredia and Zometa, which are bisphosphonate drugs that are produced, sold, and marketed by Defendant Novartis Pharmaceuticals Corporation ("NPC"). From 1999 to 2005, Dopson-Troutt was infused with Aredia and then Zometa, with her last Zometa infusion occurring on May 12, 2005. Dopson-Troutt had her tooth extracted, after which she began experiencing jaw pain caused by osteonecrosis of the jaw ("ONJ").

In 2006, Dopson-Troutt and her husband brought this action against NPC, alleging that its manufacturing, labeling, marketing, selling, advertising, and distributing of Aredia and

Zometa caused their injuries and that NPC failed to, *inter alia*, adequately warn of the risk of ONJ. This action was transferred to a Multidistrict Litigation Court in the Middle District of Tennessee for consolidated pretrial proceedings with other actions brought against NPC.

In 2012, the case was remanded back to this Court. Jury trial is set to begin on October 21, 2013. Plaintiffs' remaining claims are: negligent failure to warn (count III), breach of express warranty (count IV), and loss of consortium (count VI). [Docs. 1, 138].

## II.     PLAINTIFFS' OMNIBUS MOTION IN LIMINE

### A.     Evidence of Zometa's[1] benefits

Plaintiffs seek to exclude NPC's evidence regarding alleged off-label benefits of Zometa—*e.g.,* statements that the drug is a "cancer drug" or that the drug "extends life"—beyond those approved by the FDA for inclusion on the drug's label at the time Dopson-Troutt was prescribed and used the drug.

Plaintiffs assert that Zometa's only approved use at the time Dopson-Troutt was taking the drug was to reduce her risk of a "skeletal-related event" ("SRE"), not to fight cancer. Plaintiffs argue that attempts to equate Zometa to chemotherapy are appeals to jury sympathy and are irrelevant, prejudicial, and wholly improper under Rules 401 and 403.

At this point, the Court is unable to determine whether Zometa's off-label uses are necessarily irrelevant, and it does not appear to be prejudicial to refer to a drug routinely prescribed to cancer patients as a cancer drug. Further, it would be difficult to limit evidence of benefits to what was known by Dr. Feldman at the time he prescribed Zometa to Plaintiff, given that he does not remember her. Accordingly, Plaintiffs' motion to limit the benefits of Zometa is DENIED.

---

[1] Plaintiffs' references to "Zometa" generally also includes Aredia for the purposes of their motion *in limine*.

### B. Argument or evidence that Zometa does not cause ONJ

Plaintiffs seek to prohibit NPC from offering argument or evidence that Zometa does not cause ONJ—*i.e.,* prohibit NPC from contesting general causation. Plaintiffs assert that "in the course of twelve trials to verdict Novartis has lost this issue in every case where the jury reached it." [Doc. 40 at 5]. Plaintiffs argue that NPC's "position on general cause is usually opaque when not disingenuous," and that precluding NPC from contesting general causation would prevent it from confusing the jury and extending the length of trial. [*Id*. at 7, 9].

NPC responds that it has won seven of the twelve trials since the consolidated litigation and, of those, only one involved a special verdict form in which the jury found general causation. NPC also contends that Plaintiffs' motion is unworkable because general causation is a necessary component of specific causation and inextricably tied up with whether NPC failed to warn at various times in light of the evidence that existed.

Plaintiffs are seeking to estop NPC from relitigating an issue which NPC has previously litigated and lost against other plaintiffs. However, the Court has broad discretion in determining whether to apply offensive collateral estoppel. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979). The Court declines to exercise that discretion in this case.

At the outset, the Court disagrees with Plaintiffs' assertion that the jury verdict forms establish that NPC lost the general causation issue in every case. Further, the Court simply does not have enough information about the facts of the other trials. It is not clear that the time periods of the other twelve trials apply here. Plaintiffs suggest that the time periods are applicable because all of the trials were decided after 2009 and scientific knowledge on Zometa has not changed since 2009. However, the scope of NPC's duty to warn also depends on whether NPC knew the risks of ONJ at the time Dopson-Troutt used Zometa. Plaintiffs fail to

3

address whether, if Dopson-Troutt took the drug at different times than other plaintiffs, the scientific knowledge relevant in Dopson-Troutt's case and the other plaintiffs' trials would be different.

Further, NPC asserts that, even if the Court granted Plaintiffs' motion, its defense will continue to be that Zometa did not specifically cause Plaintiffs' injury. NPC argues that because general causation is a necessary component of specific causation (about which this Court, in denying NPC's summary judgment motion, determined that genuine issues of material fact existed), prohibiting it from contesting general causation would be unworkable. Plaintiffs did not address this in their motion or at oral argument. Given the common scientific principles underlying general and specific causation, general causation would have to be explained to the jury in order for the jury to understand and determine the parties' arguments regarding specific causation. Thus, prohibiting NPC from offering evidence on or contesting general causation would confuse the jury, unfairly prejudice NPC, and save little time.

Thus, the risk of unfair prejudice and jury confusion outweigh the benefit of judicial economy that might be derived from precluding NPC from arguing or offering evidence that Zometa does not cause ONJ. Accordingly, Plaintiffs' motion is DENIED.

### C. Offsetting damages with the benefits of Zometa

Plaintiffs seek to exclude evidence or argument suggesting that damages may be offset by the benefits of Zometa. Plaintiffs argue that this is highly prejudicial and contrary to law.

Plaintiffs contend that Restatement (Second) of Torts § 920—which sets forth the "benefit rule" of torts—is inapplicable. Section 920 states:

> Where the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable.

Restatement (Second) of Torts, § 920 (1979). Plaintiffs argue that § 920 is inapplicable because it is limited to when the tort confers a "special benefit" to the injured plaintiff and no such benefit was conferred here. Further, even if Zometa conferred a special benefit, Plaintiffs argue it is not the type of special benefit contemplated by § 920. Plaintiffs contend courts have only applied § 920 to offset damages in "wrongful birth" cases—*e.g.,* where a medical professional's negligence results in a baby born with a disease—and not in cases like this one.

In response, NPC contends that that the benefit rule is a mitigation of damages principle that applies to tortious conduct, including the tort at issue in this case. Further, NPC points to the *Fussman* case, where the court instructed the jury that the jury could consider the plaintiff's benefits when determining compensatory damages in another NPC case. [Doc. 146, Ex. 7].

Plaintiffs contend that Dopson-Troutt took Zometa to delay the risk of SRE. However, in arguing that Zometa conferred no special benefit, Plaintiffs do not provide any authority showing what constitutes a special benefit and why delaying the risk of SRE would not be a special benefit. Nor have Plaintiffs provided any authority supporting their contention that § 920 must be limited to wrongful birth cases. Although § 920 appears to arise most often in that category of cases, one of the illustrations in § 920 "at least arguably resembles the situation" here:

> A, a surgeon, without B's consent, operates upon B's eye, causing B to lose the sight in that eye. In an action of battery, it may be shown in mitigation of damages for the loss of the eye that had A not operated, the sight of the other eye would have been lost.

*Guenther v. Novartis Pharm. Corp.*, 2013 WL 4456505, at *2-3 (M.D. Fla. Aug. 16, 2013) (quoting Restatement (Second) of Torts § 920 ill. 2.)). Here, Plaintiffs contend that Dopson-Troutt would not have taken the drug had she been adequately warned, and NPC "seeks to introduce evidence of medical harm she would have suffered but for taking the drug." *Id*. at *3.

That seems reasonable to this Court. Accordingly, Plaintiffs' motion to exclude the benefits of Zometa is DENIED.

### D. Identify retained experts and limit each area of expertise to one expert

Plaintiffs request that NPC be barred from offering more than one retained expert oncologist or oral surgeon at trial and be required to tell Plaintiffs who they intend to call three weeks before trial. NPC responds that this request is moot, because NPC has already stated its intention to limit its retained experts as requested and also agrees to exchange final witness lists with Plaintiffs at least three weeks before trial. Accordingly Plaintiffs' motion to limit experts is GRANTED.

### E. Irrelevant and unduly prejudicial evidence

#### 1. Abortion

Plaintiffs seek to exclude evidence of Dopson-Troutt's abortion. Plaintiffs argue that this evidence is irrelevant and prejudicial. The Court agrees. Accordingly, Plaintiffs' motion to exclude abortion evidence is GRANTED.

#### 2. Attempted suicides

Plaintiffs seek to exclude evidence of Dopson-Troutt's attempted suicides in 1963 and 1972. NPC responds that while it does not intend to use affirmatively any evidence relating to her suicides, it may become relevant depending on how Plaintiffs' damages are characterized. For example, if Plaintiffs assert that ONJ caused Dopson-Troutt to struggle with depression, her prior suicide attempts may become relevant.

The Court agrees with NPC that the evidence could be relevant and will defer ruling until trial. However, before offering evidence relating to Dopson-Troutt's attempted suicides, NPC

6

should seek permission from the Court. Accordingly, the Court defers ruling on the exclusion of attempted suicide evidence.

### 3.  Hearing voices in 1972

Plaintiffs seek to exclude evidence related to Dopson-Troutt's testimony that she heard voices telling her "nobody loves her" and "she should die" when questioned about her 1972 abortion. This evidence, like the abortion evidence, is irrelevant and prejudicial. Accordingly, Plaintiffs' motion is GRANTED.

### 4.  2008 Arrest

Plaintiffs seek to exclude evidence of Dopson-Troutt's 2008 arrest as a co-conspirator in the identify theft crime of her daughter, Gaye Michelle Perkins-Glascoe. Plaintiffs argue that Dopson-Troutt was not convicted, and that the arrest is irrelevant to this case. NPC responds that Dopson-Troutt's arrest bears on her character for truthfulness and should be allowed on cross-examination under Rule 608(b). The Court disagrees. If Dopson-Troutt was not convicted, evidence of her arrest is not admissible. Accordingly, Plaintiffs' motion is GRANTED.

### 5.  Same-sex relationship

Plaintiffs seek to exclude evidence of Dopson-Troutt's same-sex relationship from the 1970's prior to her marriage to Mr. Troutt. Plaintiffs contend this is irrelevant, harassing, and impermissible character evidence. The Court agrees. Accordingly, Plaintiffs' motion is GRANTED.

### 6.  Testimony of Gaye Michelle Perkins-Glascoe

Plaintiffs seek to exclude any testimony of Gaye Michelle Perkins-Glascoe, Dopson-Troutt's daughter, who NPC deposed as a person with knowledge of Plaintiffs' injuries.

Plaintiffs argue that Perkins-Glascoe should be barred from testifying, because: (1) she harbors hostility towards her mother and their relationship has been contentious and estranged; (2) her knowledge of Plaintiffs' injuries is second-hand, gleaned from her brother; and (3) Plaintiffs do not intend to call her to testify.

NPC responds that Perkins-Glascoe has first-hand knowledge of facts relevant to Plaintiffs' physical condition and loss of consortium claim. Specifically, Dopson-Troutt lived with Perkins-Glascoe for a period of time in 2008, while Dopson-Troutt was allegedly suffering from ONJ and experiencing marital problems.

The Court defers ruling on the admissibility of this evidence until trial. If Perkins-Glascoe has first-hand knowledge of relevant evidence, she can testify. Plaintiffs can cross-examine on her hostility.

### III. CONCLUSION

Accordingly, it is hereby **ORDERED** that Plaintiffs Ruth Dopson-Troutt and Frank Troutt's Omnibus Motion *in Limine* [Doc. 144] is **GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART** as provided above.

**DONE AND ORDERED** at Tampa, Florida, this 20th day of September, 2013.

SUSAN C. BUCKLEW
United States District Judge

Copies To: Counsel of Record and Parties